# TERMS AND CONDITIONS OF BANKRUPTCY SALE PURSUANT TO A VIRTUAL PUBLIC AUCTION

**Disclaimer**: The Terms and Conditions of the Bankruptcy Sale and Auction (the "Terms of Sale") have not yet been approved by the Bankruptcy Court for the Southern District of New York (the 'Bankruptcy Court"). The Trustee intends to seek Bankruptcy Court approval of the Terms of Sale, which will include the terms and conditions set forth herein, as well as the Stalking Horse Agreement in connection therewith.

1. On August 6, 2020 (the "Petition Date"), Eight-115 Associates, LLC (the "Debtor") filed a voluntary petition for relief pursuant to Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") was filed in the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court"), which is currently pending as Case No. 20-11812 (MG) (the "Bankruptcy Case"), the Honorable Judge Martin Glenn presiding.

2. On August 7, 2020, Yann Geron was appointed Chapter 7 Trustee (the "Trustee") of the Debtor's estate. The Trustee is represented by Klestadt Winters Jureller Southard and Stevens LLP, with offices at 200 West 41st Street, 17th Floor, New York, New York 10036.

3. The Debtor's estate owns six parcels of real property known as and located at the following addresses: (i) 264 West 115th Street, New York, NY 10026 (Section 7, Block 1830, Lot 53) (10 Units); (ii) 276 West 115th Street, New York, NY 10026 (Section 7, Block 1830, Lot 59) (8 Units); (iii) 278 West 115th Street, New York, New York 10026 (Section 7, Block 1830, Lot 60) (10 units); (iv) 2120 Frederick Douglass Boulevard, New York, NY 10026 (Section 7, Block 1830, Lot 643) (9 Units); (v) 2122 Frederick Douglass Boulevard, New York, NY 10026 (Section 7, Block 1830, Lot 163) (9 Units); and (vi) 2124 Frederick Douglass Boulevard, New York, NY 10026 (Section 7, Block 1830, Lot 63) (9 Units) (collectively, the "Real Property").

4. The Real Property is subject to approximately 57 residential leases for real property and 3 commercial leases for real property (collectively, the "Leases"). Approximately 58 of those Leases are currently occupied by tenants.

5. The Real Property is encumbered by two mortgages (collectively, the "Mortgages") held by Harlem Multifamily LLC (the "Lender"). The Trustee and the Lender entered into and are bound by that certain Stipulation And Order, pursuant To Bankruptcy Rule 9019 and Sections 105, 362, 363, 364, and 502 of the Bankruptcy Code, which, among other things, allowed the Lender's secured claims as a first priority and unavoidable secured claim in the sum of $11 million as of the August 31, 2020, plus additional amounts for default interest, protective advances by Lender, attorneys fees and other amounts as set forth therein, which shall be due and payable at the closing on the sale of the Real Property, and authorized the Lender to credit bid at any auction sale of the Real Property, which stipulation was so-ordered by the Bankruptcy Court on January 20, 2021 (ECF No. 49 in the Debtor's bankruptcy case) (the "Lender Stipulation"). By separate order dated January 27, 2021, the Bankruptcy Court, among other things, approved the Lender Stipulation and overruled any objections thereto. (ECF No. 51 in the Debtor's bankruptcy case).

6. Maltz Auctions, Inc. d/b/a Maltz Auctions ("Maltz") and Cushman & Wakefield U.S., Inc. ("Cushman"; and together with Maltz, collectively the "Brokers") are the Trustee's retained broker/auctioneers who will conduct the Real Property Sale (as defined below).

7. The Lender and the Trustee have entered into that certain Stalking Horse Agreement (the "Stalking Horse Agreement"), dated as of June 30, 2021 with respect to the sale of the Real Property to the Lender for the sum of $8,100,000.00 (the "Stalking Horse Bid"). The Trustee will file a motion seeking entry of a Bankruptcy Court order, pursuant to 11 U.S.C. § 363 (the "Bidding Procedures Order"): (i) authorizing the Trustee to sell the Real Property (the "Real Property Sale"), free and clear of all liens, claims, encumbrances and interests (collectively, the "Liens"), but (x) subject to the Leases then in effect on the Closing Date and (y) if the Successful Purchaser (as defined below) and the Lender agree, each in their sole discretion, subject to the Mortgages of the Lender; (ii) approving the Stalking Horse Agreement and the Stalking Horse Bid, subject to higher and better offers; and (iii) approving procedures to solicit competing bids and to conduct a public auction of the Real Property (the "Auction") if the Trustee receives one or more bids that satisfies the qualifications, set forth in Paragraphs 9-17 below.

8. The date and time of the Auction (the "Auction Date") will be set forth in the Bidding Procedures Order and will be publicized at least thirty (30) before the Auction. **The bids will be submitted online and/or telephonically** and directions on how to submit an online and/or telephonic bid can be found on the Broker's website at www.MaltzAuction.com and https://nyinvestmentsales.cushwake.com/property-detail/26052.

9. In order to be permitted to submit a bid on the Real Property and to be permitted to participate in the Auction, each prospective bidder (each a "Bidder", and collectively, the "Bidders"), other than the Lender, must deliver to the Brokers, on or before 10:00 a.m. on the date prior to the Auction Date (such date and time being the "Bid Deadline"), the following: (i) an executed copy of these Terms of Sale conformed to the Bidder and the Bidder's Bid; (ii) a wire transfer (to an account specified by the Trustee), in the amount equal to $820,000.00 (the "Qualifying Deposit"), which shall serve as a partial good faith deposit against payment of the Purchase Price (as defined below); and (iii) a writing and documents meeting each of the following requirements and containing the following (all of the foregoing and the items below collectively being the "Bid Package"):

(a) It sets forth the Bidder's offer (the "Bid") for the Real Property; it is in writing and is irrevocable through a closing of the sale of the Real Property; it provides for a cash purchase price for the Real Property, expressed in U.S. Dollars;

(b) It includes written evidence of a firm, irrevocable commitment for financing, or other evidence of ability to consummate the proposed transaction, that will allow the Trustee and the Lender to make a reasonable determination as to the Bidder's financial and other capabilities to consummate the transaction contemplated by the Bid;

(c) It is not conditioned on any contingencies whatsoever, such as, without limitation: (i) the outcome of unperformed due diligence by the Bidder, (ii) the granting or extension of any permit rights, and/or (iii) obtaining financing;

(d) It discloses (i) the name and address the Bidder(s), and its members, principals, and designees, (ii) any relationship to the Debtor, any of the Debtor's members, partners, principals, the Trustee, or any of his professionals; and (iii) the names of any authorized representatives of the Bidder who will participate in the Auction; and

(e) It includes an acknowledgement and representation that the Bidder: (i) has had an opportunity to conduct any and all required diligence regarding the Real Property prior to submitting a Bid; (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Real Property in making its Bid; (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Real Property or the completeness of any information provided in connection therewith or the Auction; and (iv) is not entitled to any expense reimbursement or break-up fee.

10. Any Bidder shall have demonstrated, to the satisfaction of the Trustee and the Lender, evidence of its ability to conclude the transaction upon these Terms of Sale and the Memorandum of Sale, without delay. **THE REAL PROPERTY SALE IS NOT SUBJECT TO ANY FINANCING CONTINGENCY.**

11. The Trustee reserves the right to reject any Bidder who the Trustee, after consultation with the Lender, believes is not financially capable of consummating the purchase of the Real Property. Expenses incurred by any Bidder concerning any due diligence shall be the sole responsibility of such Bidder and, under no circumstances shall the Brokers, the Lender, the Trustee, his other retained professionals, or the estate be responsible for, or pay, such expenses. The foregoing shall not be deemed to imply a contingency upon the results of any such due diligence.

12. Any Bidder who submits a Bid, prior to the Bid Deadline, that the Trustee and Lender determine conforms to and satisfies all of the requirements of Paragraphs 9 through 11 above, shall be considered a "Qualified Bidder" provided that the Trustee timely receives all of the required supporting documentation and the Qualifying Deposit. A Bid submitted by a Qualified Bidder shall be considered a "Qualified Competing Bid."

13. Each Bidder who has submitted a Bid Package by the Bid Deadline will be notified by one of the Trustee's representatives whether they are deemed a Qualified Bidder and permitted to participate in the Auction.

14. Notwithstanding the foregoing or anything to the contrary set forth herein or in the Lender Stipulation, the Lender (i) shall not be required to comply with Paragraphs 9 through 11, (ii) shall in all events permanently be deemed a Qualified Bidder, (iii) shall be permitted to credit bid all or any amount of its Allowed Claim (as defined in the Lender Stipulation), plus all Lender Advances (as defined in the Lender Stipulation) and Claim Additions (as defined in the Lender Stipulation) and other amounts as set forth in Paragraphs 3 and 15 of the Lender Stipulation, and (iv) shall not be required to pay any Buyer's Premium (as defined below) or any deposits in connection with the Auction or the Real Property Sale (as defined below) based on the terms of the Lender Stipulation.

3

15. At the Auction, the Real Property shall be auctioned for sale to a Qualified Bidder with the bidding to remain open until there are no higher bids by a Qualified Bidder tendered for the Real Property.

16. At the conclusion of the bidding at the Auction, (a) the Trustee shall review and evaluate all Qualified Competing Bids, and (b) the Trustee shall determine (i) the Qualified Bidder who has made the highest or best bid for the Real Property (the "Successful Purchaser"), and (ii) the Qualified Bidder who has made the second highest or second-best bid (the "Backup Bidder") and announce such results at the Auction.

17. For the avoidance of doubt, (i) the Trustee shall not consider or support any bid (whether or not such bid is a Qualified Competing Bid) for the Real Property received after the close of the Auction; and (ii) the Trustee reserves the right to remove, eliminate or disqualify any Qualified Bidder (other than the Lender) who the Trustee determines is not financially capable of timely consummating the purchase of the Real Property.

18. The Successful Purchaser and the Backup Bidder of the Real Property, shall, at the conclusion of the Auction, execute and deliver to the Trustee a memorandum of sale (the "Memorandum of Sale") in accordance with these Terms of Sale substantially in the form attached hereto. The amount bid by the Successful Purchaser shall be set forth in the Memorandum of Sale as the purchase price (the "Purchase Price").

19. The Successful Purchaser shall (a) pay any and all parts of the Purchase Price solely by wire transfer and (b) be responsible for the payment of: (i) the Buyer's Premium (as defined below) (provided however, that neither the Lender nor any designee or assignee thereof shall be required to pay any Buyer's Premium, provided that the designee or assignee, if any, is affiliated with the Lender, and is not an unrelated third party); (ii) any and all transfer taxes; and (iii) any amounts due on account of fines and violations. The Successful Purchaser agrees that any and all non-monetary violations existing on the Real Property at the time of the Closing will remain on the Real Property and the Successful Purchaser understands and agrees that the Real Property will be transferred at the Closing subject to those non-monetary violations, if any.

20. **At the conclusion of the Auction, the Broker will return the Qualifying Deposits to all respective Qualified Bidders, except for the Successful Purchaser and the Backup Bidder.** Within 48 hours after conclusion of the Auction, the Successful Purchaser (except if the Successful Purchaser is the Lender) shall deliver to the Trustee, by wire in immediately available federal funds, an amount (the "Initial Deposit") equal to the sum of: (i) ten (10%) percent of the bid submitted at the Auction Successful Purchaser, minus such Successful Purchaser's applicable Qualifying Deposit, *plus* (ii) the amount of the "Buyer's Premium", such that the aggregate amount on deposit is 10% of the Purchase Price plus the Buyer's Premium. The "Buyer's Premium" shall mean the sum equal to four (4%) percent of the amount of the Bid made by the Successful Purchaser at the Auction (i.e. the Purchase Price). The Buyer's Premium shall be deemed to have been earned immediately upon the fall of the hammer and is due within 48 hours after the conclusion of the Auction. The Successful Purchaser (or the Backup Bidder, in the event of a Successful Purchaser's Default (as hereinafter defined)) are solely responsible to pay

4

the Buyer's Premium after the Auction. **Notwithstanding anything to the contrary, the Lender shall not be required at any time to pay any Qualifying Deposit, Initial Deposit, Additional Deposit (as defined below), Deposit (as defined below), New Additional Deposit (as defined below), New Deposit (as defined below), or any other deposit, or any Buyer's Premium.**

21.   Failure of the Successful Purchaser (if other than the Lender) to deliver to the Trustee the Initial Deposit within 48 hours after conclusion of the Auction, shall result in an immediate and automatic (and without any notice or opportunity to cure): (a) default under the terms of these Terms of Sale; and (b) forfeiture of all earnest monies paid, including without limitation, any part of the Qualifying Deposit and Initial Deposit, and the Trustee shall be entitled to retain all such monies free of any claim of the Successful Purchaser, but subject to the Lender's liens. The Trustee's right to retain the monies paid, including without limitation the Initial Deposit, is not a penalty but rather liquidated damages and it is hereby agreed and acknowledged by the parties hereto that the amount of damages sustained by the Trustee are difficult to determine and the liquidated damages set forth herein are reasonable under the circumstances.

22.   The Trustee shall retain the Qualifying Deposit of the Backup Bidder until the Successful Purchaser deposits with the Trustee the full amount of the Initial Deposit, including without limitation the Buyer's Premium, and the Bankruptcy Court has entered the Sale Order (defined below). Once the Trustee confirms receipt of the Successful Purchaser's payment of Initial Deposit, then the Trustee will return the Backup Bidder's respective Qualifying Deposit to the Backup Bidder within 7 business days after the Bankruptcy Court enters the Sale Order (as defined below).

23.   The sale of the Real Property pursuant to these Terms of Sale is sometimes referred to herein as the "Real Property Sale", and such sale is subject to the entry by the Bankruptcy Court of the Sale Order (as defined below). Upon conclusion of the Auction, the Trustee will seek entry of a Bankruptcy Court order (the "Sale Order"), confirming the results of the Auction and the sale process, authorizing the Trustee to close a Real Property Sale, free and clear of all liens, claims, encumbrances and interests (but (a) subject to the Leases then in effect on the date of the entry of the Sale Order, and (b) if the Successful Purchaser (or New Successful Purchaser, if applicable) and the Lender each agree, each in their sole discretion, subject to the Mortgages of the Lender), with the Successful Purchaser (or the Backup Bidder in the event of the Successful Purchaser's Default), authorizing the Trustee to make certain disbursements in connection with and following the Real Property Sale and other related relief.

24.   The Successful Purchaser must close title to the Real Property (the "Closing") at a date that is no more than thirty (30) days after entry of the Sale Order (the "Closing Date"), time being of the essence. The Closing shall take place at the offices of the Trustee's counsel at Klestadt Winters Jureller Southard & Stevens LLP, 200 West 41st Street, New York, NY 10036, or, if the Trustee elects in his discretion, through escrow at a designated title company as the Trustee may select.

25.   At the Closing, (i) the Successful Purchaser must pay to the Trustee, by wire in immediately available federal funds: (x) the balance of the Purchase Price and the Buyer's Premium (provided however, if the Lender is the Successful Purchaser the Lender shall not be

5

required to make such payment), and (y) any and all transfer taxes payable to New York State and New York City; and (ii) the Trustee shall pay to applicable governmental unit all outstanding real property taxes and water and sewer charges.

26. **TIME BEING OF THE ESSENCE as to the Successful Purchaser's obligations hereunder, including without limitation, the obligation to close on or before the Closing Date**, although the Closing Date may be extended by the Trustee, if consented to by the Lender, but such extension of the Closing Date shall not be later than thirty (30) days from the original Closing Date. To the extent that the Trustee grants any such extension, the Successful Purchaser (other than the Lender) shall deliver to the Trustee, at least five (5) business days prior to the original Closing Date, an additional, non-refundable deposit equal to ten (10%) percent of the Purchase Price (the "Additional Deposit"), such that the aggregate amount on deposit is 20% of the Purchase Price plus the Buyer's Premium. The Additional Deposit shall be made by wire transfer in immediately available federal. The Additional Deposit, together with the Successful Purchaser's Qualifying Deposit and the Initial Deposit, are collectively referred to herein as the "Deposit". In addition, all closing adjustments shall be made as of the original Closing Date. Further, the Successful Purchaser shall also be responsible for any and all real estate taxes, costs, fees and expenses incurred by the Debtor's estate after the original Closing Date through the date of the actual closing of the Real Property Sale to the Successful Purchaser. The Successful Purchaser (other than the Lender) shall also be responsible for any additional interest, default interest, fees and other amounts due to the Lender and any other party asserting a lien against the Real Property from the original Closing Date through the date of the actual closing of the Real Property Sale to the Successful Purchaser.

27. If the Successful Purchaser (other than the Lender) fails to deliver to the Trustee total required Initial Deposit within 48 hours after the conclusion of the Auction (the "Successful Purchaser's Default"), the Trustee, after consultation with the Lender, may, within three (3) business days of any Successful Purchaser's Default, deem the Backup Bidder to hold all benefits and obligations under the Terms of Sale and Memorandum of Sale, as the new Successful Purchaser (the "New Successful Purchaser").

28. In the event that of the Successful Purchaser's Default, then within 48 hours after notification by the Trustee that the Backup Bidder is the New Successful Purchaser (except if the New Successful Purchaser is the Lender) the New Successful Purchaser (other than the Lender) shall deliver to the Trustee, by wire in immediately available federal funds an amount (the "New Initial Deposit") equal to the sum of: (i) ten (10%) percent of the bid submitted by the New Successful Purchaser at the Auction, minus such New Successful Purchaser's Qualifying Deposit), *plus* (b) a four (4%) percent Buyer's Premium, such that the aggregate amount on deposit is 10% of the Purchase Price plus the Buyer's Premium. The Buyer's Premium shall be deemed to have been earned immediately upon the fall of the hammer and is due within 48 hours after counsel for the Trustee notifies (by email, by phone or any other means) the Backup Bidder or counsel for the Backup Bidder that the Backup Bidder is the New Successful Purchaser. Failure of the New Successful Purchaser to deliver the New Initial Deposit to the Trustee within 48 hours after notification by the Trustee that the Backup Bidder is the New Successful Purchaser, shall result in an immediate: (a) default under the terms of these Terms of Sale and the Memorandum of Sale; and (b) forfeiture of all earnest monies paid, including without limitation, any part of the New

Successful Purchaser's Qualifying Deposit and New Initial Deposit, including without limitation any part of the Buyer's Premium paid, and the Trustee shall be entitled to retain all such monies free of any claim of the New Successful Purchaser, but subject to the Lender's liens. If the Successful Purchaser's Default occurs after the entry of the Sale Order, then the Trustee shall be authorized to close on the Real Property Sale to the New Successful Purchaser without further order of the Bankruptcy Court. The Trustee's right to retain the monies paid, including without limitation, the Qualifying Deposit and New Initial Deposit, is not a penalty but rather liquidated damages and it is hereby agreed and acknowledged by the parties hereto that the amount of damages sustained by the Trustee are difficult to determine and the liquidated damages set forth herein are reasonable under the circumstances.

29. Any New Successful Purchaser shall **not** receive credit for any monies or funds paid by the Successful Purchaser, including without limitation, any part of a Buyer's Premium paid by the Successful Purchaser. The New Successful Purchaser must close title no later than thirty (30) days following receipt of written notice to the New Successful Purchaser of Successful Purchaser's Default (the "New Successful Purchaser's Closing Date"), **TIME BEING OF THE ESSENCE as to the New Successful Purchaser's obligations hereunder**, although the New Successful Purchaser Closing Date may be extended by the Trustee, if consented to by the Lender. To the extent that the Trustee grants any such extension, the New Successful Purchaser (other than the Lender) shall deliver to the Trustee at least five (5) business days prior to the original New Successful Purchaser Closing Date an additional, non-refundable deposit equal to ten (10%) percent of the Purchase Price (the "New Additional Deposit"), such that the aggregate amount on deposit is 20% of the Purchase Price plus the Buyer's Premium. The New Additional Deposit shall be made by wire in immediately available federal funds and, together with the New Successful Purchaser's Qualifying Deposit and the New Initial Deposit, shall be collectively referred to herein as the "New Deposit". In addition, all adjustments shall be made as of the original New Successful Purchaser Closing Date. Further, the New Successful Purchaser (other than the Lender) shall also be responsible for any and all real estate taxes, costs, fees and expenses incurred by the Debtor's estate after the original New Successful Purchaser Closing Date through the date of the actual closing of the sale of the Real Property to the New Successful Purchaser. The New Successful Purchaser shall also be responsible for any additional interest, default interest, fees and other amounts due to the Lender or other party asserting a lien against the Real Property from the original New Successful Purchaser Closing Date through the date of the actual closing of the sale of the Real Property to the New Successful Purchaser.

30. At or before the Closing, (i) the Successful Purchaser, or the New Successful Purchaser, as the case may be, shall pay any and all costs and expenses in connection with the Closing related to obtaining a survey; fee title or mortgage insurance; title company endorsement, search and escrow charges; environmental, engineering or other inspections; appraisals, reports and other costs of due diligence; and any transfer tax imposed by New York State and/or the City of New York as a result of the transfer of each Real Property; and (ii) the Trustee shall pay all unpaid real property taxes and water and sewer charges on each Real Property.

31. The Successful Purchaser, and the New Successful Purchaser if applicable, acknowledges it will be responsible for the completion of any ACRIS forms, if required. The Trustee shall not be required to execute any form of title affidavit (but may in his sole and absolute discretion) and all title exceptions customarily omitted from a title policy on account of such title

affidavit shall be deemed permitted exceptions. The Successful Purchaser, or the New Successful Purchaser if applicable, acknowledges that it will be responsible for the preparation of all Closing documents required including, but not limited to, transfer tax forms. In connection with the Closing and Closing Date (or the New Successful Purchaser Closing Date, if appliable), the Successful Purchaser (or the New Successful Purchaser, if applicable), is hereby given notice that **TIME IS OF THE ESSENCE as to all obligations hereunder of the Successful Purchaser, and the New Successful Purchaser if applicable, and the failure of the Successful Purchaser (other than the Lender), or the New Successful Purchaser (other than the Lender) if applicable, to close for any reason or no reason whatsoever (except as otherwise expressly provided herein), including without limitation, its failure to pay the balance of the Purchase Price on the Closing Date (or the New Successful Purchaser Closing Date, if appliable), will automatically (and without notice or any opportunity to cure) result in (i) an immediate forfeiture of any Qualifying Deposit, Initial Deposit, Additional Deposit, Deposit, New Initial Deposit, New Additional Deposit and New Deposit, paid by the Successful Purchaser or New Successful Purchaser as the case may be, and the Trustee shall retain all such monies; and (ii) the termination of the Successful Purchaser's (or the New Successful Purchaser's, if applicable) right to acquire all or any part of the Real Property under these Terms of Sale and the Memorandum of Sale**. The Trustee's right to retain the monies and deposits paid by the Successful Purchaser (or the New Successful Purchaser, if applicable), is not a penalty but rather liquidated damages and it is hereby agreed and acknowledged by the parties hereto that the amount of damages sustained by the Trustee are difficult to determine and the liquidated damages set forth herein are reasonable under the circumstances.

32.   The Successful Purchaser, or the New Successful Purchaser if applicable, shall be obligated to close title to the Real Property and, except as expressly set forth herein, there is no contingency of any kind or nature that will permit such Successful Purchaser, or such New Successful Purchaser if applicable, to cancel or avoid its obligation under these Terms of Sale and the Memorandum of Sale other than the Trustee's inability to deliver insurable title to each Real Property.

33.   The Successful Purchaser, or the New Successful Purchaser if applicable, shall order an examination of title of the Real Property (the "Title Report") within five (5) days after the date of the Auction from a reputable title insurance company or abstract company doing business in the New York area. The Successful Purchaser, or the New Successful Purchaser if applicable, shall furnish a copy of the Title Report to the Trustee's counsel and the Lender's counsel within one (1) business day after the Successful Purchaser's (or New Successful Purchaser's, if applicable) receipt of the Title Report. The quality of title shall be that which any reputable title insurance company authorized to do business in the State of New York is willing to approve and insure. In the event the Successful Purchaser, or the New Successful Purchaser if applicable, is unable to obtain title insurance, then the Trustee, in his sole discretion, shall have the option to obtain title insurance, from any company licensed in the State of New York, on behalf of the Successful Purchaser (or New Successful Purchaser's, if applicable) at sole cost and expense of the Successful Purchaser (or the New Successful Purchaser if applicable), to be paid on demand by the Trustee. The Successful Purchaser (or the New Successful Purchaser, if applicable) has twenty (20) days from the Auction Date to advise the Trustee (by electronic mail to the Trustee's counsel, with a copy to the Lender's counsel) of any and all title issues or defects that would in

any way allegedly be an impediment to the Closing on the Real Property Sale, or any portion thereof. Failure of the Successful Purchaser (or the New Successful Purchaser, if applicable) to advise the Trustee within twenty (20) days from the Auction Date of any such title issues or defects shall be deemed a waiver of any and all rights to raise any such title issues or defects.

34. The Brokers, the Trustee, his other retained professionals, or the estate have not made and do not make any representations or warranties as to the physical condition, expenses, operations, value of the land or buildings thereon, or any other matter or thing affecting or related to the Real Property, the Auction or the Real Property Sale, which might be pertinent to the purchase of the Real Property, including, without limitation, (i) the current or future real estate tax liability, assessment or valuation of the Real Property; (ii) the potential qualification of the Real Property for any and all benefits conferred by or available under federal, state or municipal laws, whether for subsidies, special real estate tax treatment, insurance, mortgages, or any other benefits, whether similar or dissimilar to those enumerated; (iii) the compliance or non-compliance of the Real Property, in its current or any future state, with applicable present or future zoning ordinances or other land use law or regulation, or the ability to obtain a change in the zoning or use, or a variance in respect to the Real Property; (iv) the availability of any financing for the purchase, alteration, rehabilitation or operation of the Real Property from any source, including, but not limited to, any state, city or federal government or institutional lender; (v) the current or future use of the Real Property; (vi) the current or future leases, rents, other operating incomes or expenses; (vii) the presence or absence of any laws, ordinances, rules or regulations issued by any governmental authority, agency or board and any violations thereof; (viii) the compliance or non-compliance with environmental laws and the presence or absence of underground fuel storage tanks, any asbestos, any lead paint or other hazardous materials anywhere on the Real Property, or notes or notices of violations of law or municipal ordinances, orders or requirements noted or issued by any governmental department, agency or bureau having authority as to but not limited to lands, housing, buildings, fire, health, environment and labor conditions affecting the Real Property.

35. Each Bidder hereby expressly agrees and acknowledges that no such representations or warranties have been made, and that neither the Brokers, the Trustee, his retained professionals nor the Debtor's estate, shall be liable or bound in any manner by expressed or implied warranties, guarantees, promises, statements, representations or information pertaining to the Real Property, made or furnished by the Brokers, the Trustee, his retained professionals or any real estate broker, agent, employee, servant or other person or professional representing or purporting to represent the Brokers, the Trustee, his retained professionals or the Debtor's estate unless such warranties, guarantees, promises, statements, representations or information are expressly and specifically set forth in writing within these Terms of Sale and the Memorandum of Sale.

36. The Real Property is being sold "**AS IS**" "**WHERE IS**", "**WITH ALL FAULTS**", pursuant to Section 363 of the Bankruptcy Code and without any representations, covenants, guarantees or warranties of any kind or nature, and free and clear of any monetary liens, claims, interests or encumbrances of whatever kind or nature, with any liens, if any, to attach to the proceeds of the Real Property Sale in such order and priority as they existed immediately prior to the actual Closing on the Real Property Sale (provided however, if the Successful Purchaser [or New Successful Purchaser, if appliable] and the Lender agree, each in their sole discretion, the

Real Property Sale shall be subject to the Mortgages of the Lender), and the Real Property Sale is subject to, among other things (a) any state of facts that an accurate survey may show; (b) any covenants, restrictions and easements of record; (c) any state of facts a physical inspection may show; (d) any building or zoning ordinances or other applicable municipal regulations and violations thereof; (e) any Leases; and (f) environmental conditions; provided, however, **the Real Property shall be delivered free and clear of any and all monetary liens** (provided however, if the Successful Purchaser [or New Successful Purchaser, if appliable] and the Lender agree, each in their sole discretion, the Real Property Sale shall be subject to the Mortgages of the Lender). By delivering their respective Qualifying Deposits, all Bidders acknowledge that they have had the opportunity to review and inspect each parcel of Real Property, the state of title thereof and laws, rules and regulations applicable thereto, and will rely solely thereon and on their own independent investigations and inspections of the Real Property in making their bids. The Brokers, the Trustee, his retained professionals or any of their collective representatives do not make any representations or warranties with respect to the permissible uses of any of Real Property including, but not limited to, the zoning of such Real Property. All Bidders acknowledge that they have conducted their own due diligence in connection with such Real Property and are not relying on any information provided by the Brokers, the Trustee or his retained professionals. Each parcel of Real Property will be sold subject to any and all violations requiring corrective action.

37.     The Trustee shall convey title to the Real Property by delivery of a quitclaim or Trustee Deed.

38.     Nothing contained in these Terms of Sale is intended to supersede or alter any provisions of the Bankruptcy Code, any orders entered in the Debtor's bankruptcy case (including, without limitation, the So-ordered Lender Stipulation [ECF No. 49] and the order overruling any objections to the Lender Stipulation [ECF No. 51]) or to otherwise interfere with the jurisdiction of the Bankruptcy Court. The Lender and the Trustee shall retain all of their respective rights under the Lender Stipulation. Without limiting the foregoing (i) if the Lender (or its designee) is the Successful Purchaser or New Successful Purchaser, the Lender's mortgages on the Real Property shall not merge with any deed to the Real Property granted by the Trustee to the Lender (or its designee); and (ii) following the Closing of the Real Property Sale, the Lender shall have a deficiency claim under the Loan Documents (as defined in the Lender Stipulation) in the amount set forth in Paragraph 16 of the Lender Stipulation. All of the terms and conditions set forth in these Terms of Sale are subject to modification as may be directed by the Trustee, with the consent of the Lender, or by the Bankruptcy Court. The Trustee reserves the right to modify these Terms of Sale at any time.

39.     These Terms of Sale will be read into the record, or specifically incorporated by reference, at the Auction. By submitting a Bid for the Real Property, all Bidders will be deemed to have acknowledged having read and understood these Terms of Sale and have agreed to be bound by them.

40.     If the Trustee is unable to deliver the Real Property in accordance with these Terms of Sale for any or no reason whatsoever, the Trustee's and the Brokers' only obligation will be to refund the Deposit, or New Deposit, and Buyer's Premium (if paid to the Trustee), without interest, to the Successful Purchaser, or the New Successful Purchaser, as the case may be, and upon such

refund, the Successful Purchaser or the New Successful Purchaser, as the case may be, will have no claim or recourse whatsoever against the Brokers, the Trustee or his retained professionals, the Lender, and/or the Debtor's estate, and shall have no further rights under these Terms of Sale or Memorandum of Sale.

41.    Neither the Trustee, Trustee's counsel, Brokers, the Lender, nor the Debtor's estate is liable or responsible for the payment of fees or any broker other than the Brokers retained by the Trustee in the Debtor's Bankruptcy Case.

42.    The Bankruptcy Court retains jurisdiction over the Real Property Sale and shall determine any disputes concerning the Real Property Sale of the Real Property. By participating in the Real Property Sale, all Bidders, including the Successful Purchaser and the New Successful Purchaser, consent to the jurisdiction of the Bankruptcy Court to determine such disputes under the Debtor's pending Chapter 7 Bankruptcy Case.

**I have read these Terms of Sale and agree to be bound by them**.

By: _____    Date: 9/10/21

Print Name: Avi Dishi

Print Title: _____

## MEMORANDUM OF SALE – SUCCESSFUL PURCHASER

Bid made at Auction: __9,500,000.__

Buyer's Premium: __380,000.__

Purchase Price: __9,880,000.__

The undersigned has this __10__ day of __October__ 2021, agreed to purchase the Real Property (as defined in the annexed Terms of Sale) and sold by Yann Geron, Esq., as Chapter 7 Trustee pursuant to the Order of the United States Bankruptcy Court for the Southern District of New York entered on _____ 2021 authorizing the sale of the Real Property, for the sum of $ __9,880,000.00__ DOLLARS and hereby promises and agrees to comply with the annexed Terms of Sale of the Real Property and this Memorandum of Sale.

__[signature]__
SUCCESSFUL PURCHASER (Signature)

__Avi Dishi__
PRINT NAME: on behalf of
PRINT TITLE: LLC to be named

__571 W. 183 Street__
ADDRESS

__NY, NY       10033__
ADDRESS (City, State, Zip)

__917-664-9595__
TELEPHONE NUMBER

__Avi @ elyseeinvestments.com__
EMAIL ADDRESS

Received from __Avi Dishi__ the sum of $__880,000__,000 DOLLARS, as a non-refundable initial deposit for the purchase of the Real Property pursuant to the Terms of Sale.

This is to verify that the final Purchase Price in the above sale was the sum of $ __9,880,000.__

__[signature]__
MALTZ AUCTIONS, INC.

__[signature]__
CUSHMAN & WAKEFIELD U.S., INC.

12

## SUCCESSFUL PURCHASER'S ATTORNEY INFORMATION

Name  Roni Dishi

Address  571 West 183 Street, NY NY 10033

Phone  212-568-2017